## JOSEPH FLACK

### *v.*

## JAMES W. HUGHES *et al.*

1. REGISTRATION OF MUNICIPAL BONDS. An election was held in an incorporated town, resulting in a majority vote in favor of issuing bonds for railroad purposes, there being at that time no law authorizing such a vote. By a subsequent act of the legislature, a new town was incorporated including the old town, which act recited the prior election and authorized the town to issue bonds as voted, under which the new town subscribed to the capital stock of a railroad company and issued its bonds in payment thereof: *Held*, that such bonds were not entitled to be registered in the State Auditor's office under the act of April 16, 1869, entitled "An act to fund and provide for paying the railroad debts of counties, townships, cities and towns," etc.

2. Therefore, where such bonds were registered in the Auditor's office, and taxes extended on the property of the town under the direction of the State officers, it was *held*, that a taxpayer of the town had a right to have the collection of such tax on his property enjoined.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. JOSEPH GILLESPIE, Judge, presiding.

Messrs. C. W. & E. L. THOMAS, for the plaintiff in error.

Mr. WM. H. UNDERWOOD, for the defendants in error.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in equity, to enjoin the collection of a railroad tax upon certain lots of the complainant in the town of New Athens, levied to pay the interest on twenty-one bonds of said town registered in the Auditor's office on the 8th day of April, 1870, under the act of April 16, 1869, entitled "An act to fund and provide for paying the railroad debts of counties, townships, cities and towns." Sess. Laws 1869, p. 316.

The legality of the registry of the bonds is brought in question.

It is contended that the registration was unlawful, because the question of creating the debt was not submitted to an election of the legal voters of the town "under the provisions of any law of this State," before the bonds were registered.

The provision in this respect of the foregoing act which authorizes the registering of the bonds in the office of the Auditor, is as follows: "And none of the benefits, advantages or provisions of this act shall apply to any debt, unless the subscription or donation creating such debt was first submitted to an election of the legal voters of said county, township, city or town, under the provisions of the laws of this State, and a majority of the legal voters living in said county, township, city or town were in favor of such aid, subscription or donation."

It appears that, on the 7th day of September, 1868, the legal voters of the town of Athens, which had been incorporated under the general law, held an election, at which votes were cast for or against "issuing bonds for railroad purposes to the amount not exceeding fifty thousand dollars," and a majority voted in favor of the proposition, this being the only election ever held in Athens, or *New* Athens, upon the

25—67TH ILL.

question of railroad subscription; that, at the time said election was held, there was no law authorizing Athens to make any subscription to any railroad, or to issue any bonds for railroad purposes, and no law authorizing any such an election to be held. By an act approved March 29, 1869, the legislature incorporated the town of *New* Athens, the act providing that all the town of Athens should be included in *New* Athens.

The first clause of section 1, article 8, of the incorporating act, is as follows:

" The citizens of the town of Athens, at an election held on the 7th day of September, A. D. 1868, voted for or against issuing bonds for railroad purposes to the amount of not exceeding fifty thousand dollars, and a majority having voted for issuing said bonds, the trustees of the town may issue said bonds, payable in fifteen or twenty years, at the rate of six per centum per annum, payable annually: *Provided, however,* that said bonds are only to be applied as stocks to a railroad running from New Athens to East St. Louis, or connecting with a road at Belleville that runs to that place."

This is the only power ever given by the legislature, either to the trustees of Athens, or to the town council of *New* Athens, to make any subscription to the capital stock of any railroad company, or to issue any bonds of Athens or *New* Athens in payment of any such subscription, or for railroad purposes.

Subsequently, in pursuance of an ordinance passed by the town council of *New* Athens for the purpose, a subscription was made for $50,000 of the stock of the Belleville and Southern Illinois Railroad Company, and fifty bonds of $1000 each were issued in payment therefor, bearing date Jan. 1, 1870, twenty-one of which were registered in the Auditor's office on the 8th day of April, 1870; to meet interest on which, are the taxes involved in this suit, which were extended on the collector's books under the act of 1869, in accordance

with the Auditor's certificate of the estimate of the rate of taxation required.

These bonds were not entitled to be registered, because the subscription creating the debt had not first been submitted to an election of the legal voters of the town, "under the provisions of the laws of this State." The terms of the statute are explicit, that there must have been the prerequisite of such an election. It is true, an election in fact had been held on the 7th of September, 1868, but it was one which was had without the sanction of any law whatever. It was quite different from an election held under the provisions of a law of the State, as required by the act of April 16, 1869, and was not a conformity with that requirement.

It is urged that the defect was cured by the above cited first section of chapter 8 of the special charter of New Athens, which recognized and legalized the election of September 7, 1868.

We need not consider the effect of this section upon the validity of the bonds. The bonds might be valid bonds, and yet not entitled to registration under the act of April 16, 1869. The action of the legislature in passing this special charter of New Athens, did not change the fact that, at the time the election of September 7, 1868, was held, there was no law authorizing it, and such action can not be accepted as a substitute for the explicit requirement in this respect of the law of April 16, 1869.

It is said, the provisions of that act are calculated to benefit the complainant; and that they are made to apply to the bonds in question is no grievance or just ground of complaint by him.

Without inquiring whether or not it might be of benefit to the complainant to have these bonds made subject to the provisions of that act, and to have the taxes assessed and collected by the agency of the State government rather than by that of his own town authorities, it is enough to say that it

is his right to have his taxes assessed and collected by the legally authorized officers, and not by unauthorized officers.

The decree of the court below dismissing the bill must be reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*